IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KAREEM RISHER and<br>TAMEKA VENNING, | )<br>)<br>) | No. 2:16-cv-00292-DCN |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | **ORDER** |
| JASON CHAPMAN;<br>COLLETON COUNTY SHERIFF'S<br>OFFICE; COUNTY OF COLLETON;<br>R. A. STRICKLAND, both<br>individually and as sheriff of<br>Colleton County, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 52, that the court grant in part and deny in part defendants' motion for summary judgment, ECF No. 42, and deny defendants' motion in limine, ECF No. 43. For the reasons set forth below, the court adopts the R&R, grants in part and denies in part defendants' motion for summary judgment, and denies defendants' motion in limine. Additionally, the court adopts those portions of the R&R that are not inconsistent with this order.

**I. BACKGROUND**

Kareem Risher ("Risher") and Tameka Venning ("Venning") (together, "plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 alleging that Risher's Fourth and Fourteenth Amendment rights were violated through defendants' improper search and seizure, use of excessive force, deprivation of due process, and deliberate

1

indifference.[1]  ECF No. 1-1 ¶¶ 56–69.  Plaintiffs further allege state law claims for negligence and gross negligence against Defendants R. A. Strickland ("Strickland") in his official capacity as Sheriff, the Colleton County Sheriff's Office ("CCSO"), and the County of Colleton.  Id. ¶¶ 70–76.  Defendants move for summary judgment on all claims, ECF No. 42, and file a motion in limine, ECF No. 43, seeking exclusion of plaintiffs' expert.

**A. Factual Allegations**

The R&R ably recites the relevant facts.[2]  In short, plaintiffs allege that Risher was driving in Walterboro, South Carolina when defendant Jason Chapman ("Chapman") pulled up behind Risher at a high rate of speed and followed him in an aggressive manner.  ECF No. 1-1 ¶¶ 19–21.  Chapman began his pursuit of Risher when Risher made an improper turn.  Id. ¶ 20.  Risher claims that he fled from Chapman because it was late at night and very dark outside.  He stated that he became even more fearful when Chapman turned on his blue lights.  Id. ¶ 22, 25.  Eventually, Risher pulled into a mobile home area, exited his vehicle, and began to run.  Id. ¶¶ 28–29.  Chapman and Deputy Robert Edwards ("Edwards") then pursued Risher on foot.  Id. ¶ 30.  Plaintiffs allege that without warning or justification for doing so, defendant Chapman shot Risher three times in his buttocks and the back of his right thigh.  Id. ¶ 31.  According to plaintiffs, Risher did not threaten or point a gun at anyone or have a gun at any time during the incident.  Id. ¶ 32.

---

[1] Risher was a minor at the time of the incident and is joined by Venning, his mother.
[2] Unless otherwise specified, these facts are drawn from plaintiffs' complaint.

Risher was tried and acquitted in state court on criminal charges that he pointed, presented, or possessed a gun during the events at issue. Plaintiffs have submitted testimony given at that state criminal trial as exhibits in this action. ECF No. 47-5. Additionally, plaintiffs have submitted a voluntary statement recording Chapman's recount of the events. ECF No. 47-3. According to this statement, Deputy Benjamin Polston ("Polston"), who was on the scene that night, yelled out that Risher was carrying a pistol. Id. at 2. Chapman also claimed to have observed a gun in Risher's right hand. Id. Chapman stated that he drew his service weapon after Polston yelled that Risher was "fixing" to shoot their patrol vehicle. Id. Chapman claims that he did not fire the first shot until Risher got up, and in mid-pursuit rotated from the waist, raised and extended his hand in Chapman's direction. Id. at 3. Chapman fired two additional shots after the first shot did not change Risher's position. Id. At the state criminal trial, Chapman testified that he was not able to locate a gun on or near Risher the night of the incident. ECF No. 47-5 at 328:3–6.

Plaintiffs have also provided voluntary statements by Polston and Edwards. Polston stated that he observed the same gun as Chapman and that he did yell out to Chapman that Risher had a gun. ECF No. 47-4 at 1. However, Polston testified at the state criminal trial that he did not hear any commands for Risher to drop the gun prior to the gunshots. ECF No. 47-5 at 143:5–19.

In Edwards' statement, he says that he pursued Risher on foot with a taser and a flashlight illuminating Risher. ECF No. 47-6 at 2. Although losing sight of Risher at one point, Edwards stated that he caught up to Risher and observed Risher raise his hand in a pointing gesture towards Chapman. Id. It was at this point that Edwards observed

Chapman fire three shots from his gun.  Id.  Edwards was equipped with a microphone on his lapel, and the audio was submitted by plaintiffs.  ECF No. 47-7.  This audio does not record Polston or any other officer telling Chapman that Risher has a gun.  Furthermore, this audio does not record Chapman or any other officer ordering Risher to drop anything prior to the gunshots being fired.  The audio does record Edwards stating that he did not see a gun.

### B. Procedural History

The magistrate judge's R&R recommends the following disposition of the parties' motions: (1) grant defendants' motion for summary judgment as to plaintiffs' § 1983 claim for deliberate indifference; (2) grant defendants' motion for summary judgment as to plaintiffs' state law claims for vicarious liability, negligent hiring, and negligent training and supervision; (3) deny defendants' motion for summary judgment as to plaintiffs' claim under §1983 for improper search and seizure, excessive force, and due process violation; and (4) deny defendants motion in limine.  The magistrate judge's R&R further recommends that Colleton County be dismissed from this action entirely, ECF No. 52.

Defendants filed timely objections to the R&R, ECF No. 55, and plaintiffs have filed a response, ECF No. 56.  The matter is now ripe for the court's review.

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report.  28 U.S.C. § 636(b)(1).  The magistrate judge's recommendation does not carry presumptive

weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., No. 6:12-cv-183, 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

### III. DISCUSSION

Defendants list two objections to the R&R. Defendants assert that the magistrate judge improperly: (1) found that Chapman is not entitled to qualified immunity; (2) denied defendants' motion for summary judgment as to plaintiffs' claim under §1983 for improper search and seizure, excessive force, and due process violation. The court addresses each of these objections in turn.

**A. Defendants are not entitled to qualified immunity because there is a dispute of material fact as to whether a clearly established constitutional right was violated.**

Defendants are entitled to invoke qualified immunity if they meet the requirements. Cooper v Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). Under the two-step process set out by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), the court must determine (1) whether a constitutional violation occurred, and (2) whether the right violated was clearly established. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194 (2001)). A right is "clearly established" when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper, 735 F.3d at 158.

The first step of the process asks whether Chapman violated Risher's Fourth Amendment right to be free from improper search and seizure, excessive force, and due process violations. Excessive force can be used by an officer "where he has probable

6

cause to believe that a suspect poses a threat of serious physical harm, either to himself or others." Cooper, 735 F.3d at 159. Conversely, when there is no threat of harm to the officer or others, the harm resulting from failure to apprehend the suspect does not justify the use of deadly force. Tennessee v. Garner, 471 U.S. 1, 11 (1985). Whether probable cause existed here hinges on whether Chapman's use of deadly force was "objectively reasonable in light of the facts and circumstances confronting them, viewed in the light most favorable to the plaintiffs, without regard to [Chapman's] underlying intent or motivation." Hensley v. Price, 876 F.3d 573, 582 (4th Cir. 2017) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

The reasonableness of the conduct is based on the totality of the circumstances. Id. For example, in Hensley, officers responded to a domestic disturbance at Hensley's home without knowing any details about the situation. Id. at 583. When officers arrived, Hensley walked out of his home with a handgun, but never raised it toward the officers. Id. When Hensley stepped into the yard with the handgun pointed down, officers shot and killed Hensley without warning. Id. In Hensley, the plaintiffs' evidence showed that Hensley never made threatening actions or statements toward anyone preceding the shooting. Id. The Fourth Circuit found that the district court properly entered a summary judgment order denying officers' qualified immunity because a jury could reasonably conclude, if accepting the plaintiffs' version of facts, that the officers shot Hensley for simply possessing a firearm. Id. Even if the officers reasonably believed that Hensley posed a threat of serious physical harm, "their failure to warn him—or to order him to drop the gun—before employing deadly force creates an additional impediment." Id. at 584 (noting that the deputies conceded that they never ordered Hensley to drop the gun or

warn that they would shoot even though they watched Hensley step into the yard, pausing to look back at his home, then walk toward them). While the court acknowledged that the circumstances were tense and fast-moving, they found that such circumstances does not remove the requirements that police officers first issue a warning. Id. at 585.

In comparison, a police officer was justified in using deadly force against a suspect who advanced at him with a knife and disregarded the officers' commands to stop. Sigman v. Town of Chapel Hill, 161 F.3d 782, 787 (4th Cir. 1998). Moreover, the suspect had threatened multiple times to kill himself, his girlfriend and even the officer by swinging a knife at him. Id. The court held that the deadly force was reasonable because of the actual threats to officers' lives, the suspect's willingness to use his knife, and his failure to obey officers' commands to stop. Id.

Here, a jury could conclude that it was unreasonable for Chapman to believe that Risher posed a threat of serious physical harm either to himself or others. We start by looking at the totality of the circumstances. Chapman began his pursuit of Risher after Risher made an improper turn. ECF No. 1-1 ¶ 20. When Chapman turned on his blue lights, Risher actively resisted arrest by not stopping his vehicle and then by fleeing on foot. Id. ¶¶ 28–29. Chapman drew his weapon when Polston yelled out that Risher had a gun. ECF No. 47-3 at 2. At this point, Risher did not extend his arm or point the gun at anyone so he did not pose a threat of serious physical harm at that moment. Id. It was when Risher took off running again that defendants allege Risher abruptly turned around raising and extending his right arm. Id. at 3. However, plaintiffs claim that Risher never pointed a gun at anyone and submit evidence to support it. ECF No. 47-8 ¶ 32. Because

these statements are contradicting, there remains a question of fact as to Risher's conduct and whether he did pose a threat of serious harm.

Defendants contend that a reasonable belief that Risher had a gun and was posing a threat of serious physical harm is enough for qualified immunity. We disagree. Plaintiffs' submission of statements and evidence to the contrary is enough for them to survive summary judgment. See Vathekan v. Prince George's County, 154 F.3d 173, 80 (4th Cir. 1998) (contradicting statements should not be disregarded at the summary judgment stage because, at most, it creates a credibility question for the jury). Like in Hensley, if the jury was presented with and believed the plaintiffs' evidence, they could conclude that Risher did not make any threatening actions or statements toward anyone preceding the shooting. Hensley, 876 F.3d at 583. Based on the audio record, a jury could determine that the officer did not have reason to believe that Risher had a gun because there was no mention of a gun prior to the gunshots. And even if Chapman reasonably believed that Risher did pose a threat, there was no record of Chapman warning him or ordering him to drop the gun at any time before firing shots. Based on Risher's deposition testimony, a jury could determine that Risher was not pointing a gun when shots were fired. Based on ambulance reports, photographs, and expert testimony, a jury could determine that Risher had his back turned to Chapman when shots were fired.[3] Therefore, a jury could find that an officer would not have reasonably believed he was being threatened of serious physical harm. Thus, there remains a question of fact as

---

[3] The state court jury was presented with the facts relied on by the parties in the instant case and acquitted Risher of all gun-related charges.

9

to whether Risher posed a deadly threat to police officers when Risher was pursued on foot.

The second step of the process asks whether the right violated was clearly established so that a reasonable official would understand that he violated that right. Cooper, 735 F.3d at 158. In this case, there is a genuine issue of material fact whether Risher posed a threat of physical harm to the officers or others. Viewing the evidence in the light most favorable to the plaintiffs, a jury could conclude that Risher did not pose a serious threat of physical harm, and that it was unreasonable for Chapman to shoot Risher in the back as he ran away. As a result, it is improper to grant defendants' summary judgment on qualified immunity grounds when there is a dispute as to the alleged conduct and whether Chapman acted reasonably. See Connor v. Thompson, 647 F. App'x 231, 239 (4th Cir. 2016) (finding that qualified immunity was barred on summary judgment because Appellee's version of facts is enough to support that shooting the suspect amounted to excessive force, and the officer should have known it was unreasonable to do so); Vathekan, 154 F.3d at 180 (denying summary judgment on qualified immunity when there was a dispute as to the officer's conduct was unreasonable); Nolan v. Grim, 2010 WL 4929658, at *10 (W.D. Va. Nov. 30, 2010) (finding that defendant was not entitled to qualified immunity when there was a disputed material fact that determines whether the officer should have reasonably known use of deadly force was excessive).

Therefore, the court denies defendant Chapman qualified immunity.

**B. Summary judgment is denied on plaintiffs' § 1983 claim for improper search and seizure, excessive force, and due process violations because defendants failed to show that there is no genuine dispute as to any material fact.**

A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Both parties analyze this action solely under the Fourth Amendment. The Fourth Amendment prohibits unreasonable seizures which effectively bars police officers from using excessive force to seize a free citizen. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). Determining whether an officer used excessive force to conduct a seizure is based on an objective reasonableness standard. Id. The court considers three factors when applying the standard: (1) severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting or evading arrest by flight. Graham, 490 U.S. at 396.

The court considers only the second factor, as the other factors remain undisputed. Because the second factor addresses whether the suspect poses an immediate threat to the safety of the officers, the court refers to the same analysis discussed in Section A. Viewing the evidence in the light most favorable to plaintiffs, the court finds that a jury could conclude that Chapman violated plaintiffs' Fourth Amendment right to be free from excessive force. Therefore, the court denies defendants' motion for summary

judgment on plaintiffs' § 1983 claim for improper search and seizure, excessive force, and due process violation.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, ECF No. 52, **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment, ECF No. 42, and **DENIES** defendants' motion in limine, ECF No. 43.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 26, 2019**
**Charleston, South Carolina**